**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: SEARCH WARRANTS | 1:21-cv-04968-SDG <br> 1:21-cv-04969-SDG |

**OPINION AND ORDER**

This matter is before the Court on motions for a temporary restraining order and preliminary injunction [ECF 6, 1:21-cv-04968-SDG; ECF 6, 1:21-cv-04969-SDG]. Movants seek an injunction preventing the United States Department of Justice from using a filter or taint team that includes employees of the United States Attorney's Office for the Northern District of Georgia to review seized emails and other electronic documents for privilege. After review of the parties' briefing, and with the benefit of a hearing, the Court **GRANTS** the motions and **DIRECTS** the Government to conduct the review of the seized items in accordance with a modified filter protocol.

**I.   BACKGROUND[1]**

Movants are a small, Georgia-based law firm (the Law Firm) and an attorney who previously worked for that law firm (the Attorney). The Attorney is currently

---

[1]   The search warrants at issue and the related proceedings have been placed under seal. Due to the evolving law concerning the use of filter teams and the

the target of a federal investigation being conducted by the United States Attorney's Office for the Northern District of Georgia. The Government obtained search warrants authorizing the seizure of information stored in two online accounts held by the Law Firm, which contain the Attorney's emails and text messages. In a declaration submitted in support of the motions, the Attorney represents that communications subject to the warrant include many privileged communications with clients who are not the subject of the Government's investigation, some of whom face potential unrelated criminal liability, and privileged communications between Movants and Movants' own legal counsel.

To prevent disclosure of privileged communications to the prosecution team, the Government set out a filter protocol. The filter protocol called for the creation of a filter or taint team comprised of at least one Assistant United States Attorney from the office for the Northern District of Georgia, at least one legal assistant from that office, at least one FBI agent, and a computer technician. As proposed, the filter team would be responsible for determining whether items are

---

public interest in open court proceedings, this opinion and order will be public. The dockets in these cases otherwise remain sealed. Names and other identifying information have purposefully been omitted from this order to preserve the confidential nature of the Government's investigation and its intended targets.

privileged and therefore entitled to protection. Relevant here, this filter protocol provided that:

- The filter team would conduct an initial review for privileged or potentially privileged communications. Items identified as not privileged would be segregated by the computer technician and provided to the prosecution team.

- The filter team would then conduct a review to determine the responsiveness of privileged or potentially privileged communications.

- Non-responsive items designated as privileged or potentially privileged would not be provided to the prosecution team.

- Items determined to be responsive and not protected would be provided to the prosecution team.

- Items determined to be responsive and protected but non-redactable would not be provided to the prosecution team.

- Items determined to be (1) responsive, protected, and redactable or (2) responsive and potentially protected would be provided to Movants along with a privilege log. These items would only be provided to the prosecution team if Movants agreed to disclosure or by Court order.

Movants object to this protocol as violating the constitutional and common law rights of Movants and their clients and therefore seek injunctive relief preventing the Government from utilizing this filter protocol.

## II. LEGAL STANDARD

The standard for the issuance of a temporary restraining order and a preliminary injunction are identical. *Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010). A preliminary injunction is "an extraordinary remedy." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). To obtain the relief they seek, Movants must affirmatively demonstrate: "(1) substantial likelihood of success on the merits; (2) [that] irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to [them] outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). *See also Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites.").

## III. DISCUSSION

Movants' concerns about the Government's proposed filter protocol are well taken. The Government intends to search the Law Firm's communications sent to and from the Attorney. These items undoubtedly include privileged communications between Movants and their clients, and may include privileged

communications between Movants and their own attorneys. Any protocol designed to protect this privilege must include sufficient safeguards against disclosure to the prosecution team or any potential future investigator or prosecutor, whether on this investigation or otherwise. With this in mind, the Court agrees with Movants that the filter protocol proposed by the Government is insufficient under the circumstances. An injunction is warranted.

    **a.**    **Substantial Likelihood of Success on the Merits**

Only Federal Rule of Criminal Procedure 41(g), which provides for the return of wrongfully seized property, offers a remedy for the intrusion articulated by Movants. Rule 41(g) "offers the remedy of returning . . . improperly seized documents protected by privilege *before* the government has reviewed them." *United States v. Korf*, 11 F.4th 1235, 1247 (11th Cir. 2021) (emphasis in original) (citing *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021)). Indeed, the Eleventh Circuit has noted that Rule 41(g) "is the proper way to come before the court to seek an injunction regarding the government's use of a filter team to review seized documents." *Korf*, 11 F.4th at 1245 n.6. The Court therefore considers Rule 41(g) to be the basis for Movants' request for injunctive relief.[2]

---

[2] Though Movants did not make this argument in their briefing, counsel for Movants acknowledged at the preliminary injunction hearing that Rule 41(g) is the proper vehicle for the requested injunctive relief. The Government has

Movants are not arguing that the use of a filter team is *per se* violative of their rights, nor could they. The Eleventh Circuit has expressly permitted the use of filter or taint teams to review potentially privileged communications in criminal investigations. *Id.* at 1248–49. The issue before the Court is whether, under the specific facts and circumstances here, the filter protocol proposed by the Government sufficiently protects against the risk of revealing attorney-client privileged communications or attorney work-product. Though assessing the appropriateness of filter protocols is an area of law in need of development, the Eleventh Circuit and other circuit courts have provided helpful guidance.

> ### i.   **Circuit Court Precedent**

In support of their position, Movants rely on a Fourth Circuit case, *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019), as amended (Oct. 31, 2019) (hereafter, *Baltimore Law Firm*). There, the Fourth Circuit reversed the denial of preliminary injunctive relief and held that the use of a filter team to review a law firm's documents was improper. *Id.* at 164. *Baltimore Law Firm* involved a government search of a law firm pursuant to a warrant. *Id.* at 166–67. As is likely here, the majority of the seized emails concerned clients who were not

---

not raised any procedural objection to the injunctive relief requested.

subjects of the investigation, some of whom the law firm asserted were or could become the subject of federal investigations. *Id.* at 168.

The filter protocol at issue in *Baltimore Law Firm* is nearly identical to the one proposed by the Government here. Specifically, the filter team included employees and attorneys from the investigating U.S. Attorney's Office, agents from the investigating agencies, and forensic examiners, and allowed the filter team to unilaterally determine that a communication was not privileged and could be directly turned over to the prosecution team. *Id.* at 165–166.

The Fourth Circuit expressed deep concern about the lack of consideration that the government, the magistrate judge, and the district court gave to the principles protecting attorney-client relationships. *Id.* at 179. It found that the magistrate judge erred by allowing the filter team to make final privilege determinations, thereby assigning judicial functions to an executive branch; by permitting the filter protocol after an *ex parte* request and before understanding the nature and scope of the seizure; by allowing an extensive search into unrelated client emails; and by allowing the filter team to contact the law firm's clients to obtain privilege waivers. *Id.* at 179–81. The Fourth Circuit held that the district court committed reversible error by allowing the proposed filter protocol and

concluded that, under these circumstances, a magistrate judge or a special master must perform the privilege review of the seized communications. *Id.* at 181.

The Eleventh Circuit distinguished *Baltimore Law Firm* in coming to its own conclusion about the use of filter teams in *Korf*, in which it held that the use of a filter team was not *per se* improper or a violation of a party's constitutional and common law rights. 11 F.4th at 1248-49. *Korf* involved a government search of a suite of offices, during which "materials were seized from the office of an in-house attorney." *Id.* at 1238. Unlike *Baltimore Law Firm*, however, the movants did not claim a majority of the seized materials were privileged or irrelevant to the investigation. *Id.* at 1251. Indeed, only three boxes of materials were taken from the in-house lawyer's office. *Id.* at 1242. Those boxes were immediately segregated and marked. *Id.* The original filter protocol proposed in *Korf* walled-off any filter team member from future involvement in the matter, allowed communications not including an attorney to be provided to the investigative team, but required the filter team to obtain a court order before providing any communications to or from attorneys to the investigative team. *Id.* at 1239.

A magistrate judge allowed the movants to intervene and object to the filter protocol. *Id.* at 1242. After a hearing, the magistrate judge rejected the movants' argument that the use of the filter team was *per se* flawed. Nonetheless, the

magistrate judge expressed concern about the government's proposed protocol and imposed a modified protocol to alleviate those concerns. *Id.* at 1242–43. The modified protocol allowed the movants to conduct the initial review, required that the filter team be comprised of attorneys and staff from outside of the investigative office and who did not share a first-level supervisor with the investigative team, and only permitted potentially privileged communications to go to the investigative team if the parties agreed or the court ordered disclosure. *Id.* at 1243.

The district court upheld the modified protocol, as did the Eleventh Circuit. The Eleventh Circuit explicitly distinguished *Baltimore Law Firm*, finding that the amount and type of seized communications were different and that the concerns raised by the Fourth Circuit were addressed by the magistrate judge holding an adversary hearing and imposing modifications, including allowing the movants to conduct the first review of the potentially privileged materials.[3] *Id.* at 1251.

### ii. The Government's Proposed Protocol

In *Korf*, the Eleventh Circuit made clear that its conclusion about the sufficiency of the protocol was specific to the circumstances and that it was not

---

[3] The Eleventh Circuit also distinguished *In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006), in which the Sixth Circuit held that use of a filter team to review grand-jury subpoenaed documents was improper and thoroughly addressed the risks of filter teams. Movants cite to, but do not rely, on this case.

"prejudging other filter protocols." *Id.* at 1251 n.10. Accordingly, under Eleventh Circuit precedent, filter teams and filter protocols are not *per se* improper: whether a filter protocol suffices depends on the particular facts and circumstances and, specifically, on the types of materials seized and the purpose of the search. In other words, a court should consider the risks to attorney-client privilege and work-product protection that are associated with a given filter protocol and consider how those risks apply to the search at issue.

Here, the filter protocol proposed by the Government does not sufficiently protect privileged communications, either between Movants and their clients or Movants and their own attorneys. The facts and circumstances resemble those in *Baltimore Law Firm*. Both searches involve large amounts of attorney-client communications, many of which are likely irrelevant to the investigation of which the Attorney is the target, and there is a risk that some of those clients sought advice related to actual or potential federal criminal investigations. The Government's proposed protocol is also nearly identical to that rejected by the Fourth Circuit.

The Court is particularly concerned that the proposed protocol here (1) allows attorneys and employees from the U.S. Attorney's Office for the Northern District of Georgia—the investigating office—to be on the filter team and (2) allows

the filter team to turn over to the prosecution team any document that it determines is not privileged. This protocol presents a real risk that members of the filter team may themselves be actively involved in a current or future investigation involving one of Movants' clients. What's more, the filter or taint review of a law firm's communications implicates so many privileged relationships, the majority of which are unlikely to relate to this investigation, that the risk of an inadvertent disclosure is great. For these reasons, the Court finds that the Government's proposed filter protocol insufficiently protects the privileged communications. Movants have thus demonstrated a substantial likelihood of success on the merits of their Rule 41(b) claim.

  **b.**  **Irreparable Harm to Movants**

It is undisputed that the information seized from Movants likely includes attorney-client privileged communications and work-product protected materials. It is also undisputed that the Court has a strong interest in protecting these privileges. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (noting that giving sound legal advice "depends upon the lawyer's being fully informed by the client"); *Korf*, 1235 F.4th at 1249 (noting that the attorney-client and work-product protections "play a vital 'role in assuring the proper functioning of the

criminal justice system' and provide a means for a lawyer to prepare her client's case") (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).

The protections offered to attorney-client communications and work product are "deeply important and must be respected," but "are not inviolate." *Korf*, 1235 F.4th at 1249. Where, as here, the Government intends to review protected materials pursuant to search warrants, even through the use of a filter team, privileged communications are placed at risk. Therefore, "any filter protocol must appropriately take into account the importance of these privileges." *Id.*

The Court finds that Movants have shown a danger of irreparable harm to their and their clients' privileges. Absent injunctive relief, these risks are unmitigated. Moreover, given the importance of the privileges to the attorney-client relationship, the existence of these risks alone causes harm. "And that harm is plainly irreparable, in that the Filter Team's review of those privileged materials cannot be undone." *Baltimore Law Firm*, 942 F.3d at 175.

### c. Comparative Harm to the Government

The Government has a strong interest in efficient investigations and enjoining a review of potentially thousands of electronic communications delays and complicates its investigation. This interest does not, however, outweigh Movants' interest in protecting their and their clients' privileged communications.

### d. Public Interest

The Court finds that enjoining the use of the proposed filter protocol is in the public's interest. The attorney-client privilege has a role not only in individual attorney-client relationships but also in maintaining the proper functioning of the criminal justice system, *Korf*, 11 F.4th at 1249, and "encourag[ing] full and frank communication between attorneys and their clients and thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. Protecting attorney-client privilege and work product therefore serves the public interest. This interest outweighs the public's general interest in the efficient investigation and prosecution of federal crimes.

### e. The Modified Protocol

During the hearing, the Court raised questions about whether it was properly within its role and authority to fashion its own modified filter-review protocol, as opposed to simply ruling on Movants' preliminary injunction and, if granted, leaving it to the Government and its executive branch function to modify the protocol based on the Court's ruling. However, counsel for both the Government and Movants agreed that the Court has the authority to fashion an appropriate remedy, including imposing a modified filter protocol, and have consented to the Court doing so here.

Considering the size of the Law Firm, the location of its client base, the anticipated volume of seized communications, and the scope of its practice, the Court modifies the filter protocol as follows:

- The United States Attorney's Office must assign a filter team from an office or component of the Department of Justice outside of the states identified by Movants as those of concern: Georgia, Alabama, South Carolina, North Carolina, Tennessee, Kentucky, and Ohio.[4] Likewise, any FBI or other investigating agency personnel assigned to the filter team must report to a field office outside of these identified states.

- Any item identified by the filter team as one that should or may be produced to the prosecution team shall first be provided to Movants' counsel before any further disclosure. If the item is one that is designated as privileged and redactable, the filter team shall identify at the time of disclosure to Movants' counsel the information proposed to be redacted.

- Movants' counsel may, within 45 days of receipt of the item, object to its disclosure or the scope of any proposed redactions. Movants' counsel must provide a designated filter-team representative with a written privilege log that specifically identifies the

---

[4] At the Court's request, in an email communication to the Court, Movants' counsel identified these states as ones in which Movants' clients or potential clients could be exposed to criminal investigation.

- challenged item or challenged redaction and the basis for the privilege objection. If no response is provided by Movants' counsel within 45 days of receipt, the Government may infer consent to the item's disclosure to the prosecution team.[5]

- Following receipt of Movants' privilege log, the filter-team representative and Movants' counsel shall confer in good faith. If no compromise can be reached, the filter-team representative or Movants' counsel may contact Chambers via email to resolve the dispute. Depending on the volume or complexity of such disputes, the Court may appoint a special master. The Government shall bear any costs and fees associated with the appointment of a special master in the first instance. The Court will, however, entertain a motion for fees and costs against Movants if their privilege assertions are found to be unreasonable or if Movants' counsel declines to confer in good-faith.

- Communications shall only be disclosed to the prosecution team if (1) Movants consent (or fail to timely object) to disclosure or (2) the Court or special master determines that the item, in

---

[5] Movants' counsel and the filter-team representative are encouraged to work together to agree on modifications of the 45-day review period when appropriate or necessary depending on the volume of production, including when production is made on a rolling basis. The Court need not approve any mutually agreed modifications. Absent agreement concerning a requested modification, the filter-team representative or Movants' counsel may contact Chambers via email to request a conference with the Court.

>> redacted or unredacted form, may be disclosed.

The Court finds that, under the particular facts and circumstances here, this modified protocol sufficiently protects privileged communications and protected information from disclosure.

## IV. CONCLUSION

Movants' motions for a preliminary injunction [ECF 6, 1:21-cv-04968-SDG; ECF 6, 1:21-cv-04969-SDG] are **GRANTED**. The Government is hereby **RESTRAINED AND ENJOINED** from reviewing the seized communications pursuant to its proposed filter protocol. The Court **DIRECTS** the Government to assign a filter team and perform the review of the seized communications in accordance with the modified filter protocol set forth herein. By written agreement with Movants' counsel, the parties may agree to further modifications of this protocol without Court intervention.

The Clerk is **DIRECTED** to unseal 1:21-cv-04968-SDG and 1:21-cv-04969, to seal all docket entries other than this Order, and to redact the names of Defendants and Movants, as well as the case titles for both cases.

**SO ORDERED** this the 15th day of December 2021.

Steven D. Grimberg
United States District Court Judge